# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** <br><br> KASSIE ASHCRAFT, <br><br> **Debtor.** | **Bankruptcy Case** <br> **No. 08-40445** |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Jay A. Kohler, Idaho Falls, Idaho, Attorney for Debtor.

Stephen J. Blaser, Blackfoot, Idaho, Attorney for Creditor Beneficial Idaho, Inc.

R. Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.

### *Introduction*

Debtor Kassie Ashcraft has filed a Motion to Avoid Lien on Exempt Property, Docket No. 19, directed at Creditor Beneficial Idaho, Inc. ("Creditor"), which in turn responded, Docket No. 25. The Court conducted a hearing on the motion on October 7, 2008, and thereafter took

MEMORANDUM OF DECISION - 1

the issues under advisement.  The Court has now considered the submissions of the parties, the arguments of counsel, as well as the applicable law and legal authorities.  This Memorandum constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052; 9014.[1]

*Procedural History*

In 1998, Debtor and her then-husband, Ronald Ashcraft ("Ashcraft"), built a home on approximately four acres of property in Bingham County, Idaho.  Thereafter, and without Debtor's knowledge, Ashcraft obtained a loan from Creditor, and later defaulted.  Creditor then sued Ashcraft and obtained a judgment against him, only, for $14,936.36.  Creditor recorded the judgment on May 25, 2007.

Debtor and Ashcraft divorced on November 21, 2007.  In accordance with the divorce decree, Ashcraft executed a quitclaim deed conveying the Bingham County property to Debtor as her sole and separate property.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 2

The deed was recorded a few days later.

On June 4, 2008, Debtor filed for chapter 7 bankruptcy relief. In her schedules, she listed the Bingham County property as her homestead and claimed it exempt. No objections to her claim of exemption were filed.

### *Analysis and Disposition*

Debtor moves to avoid Creditor's judgment lien under § 522(f), which provides in pertinent part:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
> (A) a judicial lien . . . .

11 U.S.C. § 522(f)(1).

The Ninth Circuit has held that, "under § 522(f)(1), a debtor may avoid a lien if three conditions are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial

MEMORANDUM OF DECISION - 3

lien." *Culver, LLC v. Chiu (In re Chiu)*, 304 F.3d 905, 908 (9th Cir. 2002) (quoting *Catli v. Catli (In re Catli)*, 999 F.2d 1405, 1406 (9th Cir. 1993)).

### A.

### Debtor's Property Interest at the Time the Lien Fixed

In deciding a motion under § 522(f)(1), bankruptcy courts must often first focus on whether the debtor held an interest in the property at the time the lien fixed:

> The operation of Section 522(f) is not to avoid a "lien", *per se*, although that is the practical effect in most cases. Rather, by its terms, Section 522(f) provides for the avoidance of the "fixing" of certain liens. To "fix" means to "fasten a liability upon." Thus, Section 522(f) operates retrospectively to annul the *event* of fastening the subject lien upon a property interest. Accordingly, the fundamental question of ownership is whether the property encumbered by the subject lien was "property of the debtor" *at the time of the fixing* of that lien upon such property.

*In re Chiu*, 304 F.3d at 908-09 (citing *In re Vincent*, 260 B.R. 617, 620-21 (Bankr. D. Conn. 2000) (emphasis in original).

Debtor and Creditor each rely upon case law to support their

MEMORANDUM OF DECISION - 4

positions.  Debtor cites *The Law Offices of Moore & Moore v. Stoneking (In re Stoneking)*, 225 B.R. 690 (9th Cir. BAP 1998) and argues that avoidance of Creditor's lien is appropriate under the circumstances.  Creditor relies on *Farrey v. Sanderfoot*, 500 U.S. 291 (1991) and *In re Mingo*, 189 B.R. 514 (Bankr. D. Idaho 1995), in opposition to the motion.

    1.  <u>*Farrey* and *In re Mingo*</u>

In *Farrey*, the U.S. Supreme Court addressed the status of a lien created by a divorce decree.  In dissolving the marriage, the state court had awarded the marital homestead to the husband, requiring that he pay a sum of money to the wife to balance the division of the marital assets.  To secure the husband's obligation to pay the wife, the court imposed a lien upon the homestead.  Shortly after the divorce, the now ex-husband filed a bankruptcy petition and sought to avoid the judicial lien securing the indebtedness to his now ex-wife.

The *Farrey* court reasoned that "unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms

MEMORANDUM OF DECISION - 5

of § 522(f)(1)." *Farrey*, 500 U.S. at 296 (emphasis in original). The court stated that "the critical inquiry remains whether the debtor ever possessed the interest to which the lien fixed, before it fixed. If he or she did not, § 522(f)(1) does not permit the debtor to avoid the fixing of the lien on that interest." *Id*. at 299.

Ultimately, the *Farrey* court viewed the impact of the entry of the divorce decree as three-fold: first, it extinguished the pre-existing undivided one-half interests in the homestead held by both the husband and wife during their marriage; second, it created a new, fee simple interest in the homestead in favor of the ex-husband; and third, the decree created and imposed a lien in favor of the ex-wife on that homestead. *Id.* at 299-300. Under this paradigm, the court concluded that the ex-husband never possessed the fee simple interest in the homestead prior to the fixing of the ex-wife's lien, and thus he could not utilize § 522(f)(1) to avoid the lien. *Id*. at 300. The court stated, "[w]e hold that § 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that

MEMORANDUM OF DECISION - 6

interest." *Id*. at 301.[2]

Post-*Farrey*, this Court decided *In re Mingo.* In that case, two creditors held judicial liens against the Mingos' community homestead prior to their divorce. The debtor was awarded the homestead in the decree, he filed his bankruptcy petition shortly thereafter, and he sought to avoid the creditors' liens. This Court noted that it had previously held that when a divorce decree transfers community property to one party as his or her separate property, the community property interest is thereby extinguished and a new property interest is created. *In re Mingo*, 189 B.R. at 515-16 (citing *In re Hunt*, 94 I.B.C.R. 62, 65-66 (Bankr. D. Idaho 1994)). Applying *In re Hunt* and *Farrey*, this Court held that because the Mingos' community property rights were extinguished with the divorce decree, and because a new ownership right was created in favor of the debtor,

---

[2] The analytical shortcomings of *Farrey's* approach, making timing the critical inquiry, have been highlighted in bankruptcy treatises. *See Weeks v. Pederson (In re Pederson)*, 230 B.R. 158, 161-62 (9th Cir. BAP 1999) (citing 4 L. King, *Collier on Bankruptcy*, ¶ 522.11[4] (15th ed. Rev. 1998) (noting that "the time of the fixing of the lien on the debtor's interest in the property is not relevant . . . ."), and 2 Epstein, Nickels, White, *Bankruptcy* § 8-27 (1992)).

MEMORANDUM OF DECISION - 7

then the debtor "owned no interest in this property before the liens attached, and therefore, the fixing of these liens may not be avoided under § 522(f)(1)." *In re Mingo*, 189 B.R. at 516.

Under the rationale expressed in *Farrey* and *In re Mingo*, Creditor contends that Debtor may not avoid its lien on the Bingham County property. It points out that Ashcraft's lien attached to the property when it was held by the parties as community property, and that community property interest was extinguished by the divorce decree, substituting, instead, a new property right in favor of Debtor, that of fee simple ownership. Thus, Creditor insists, Debtor cannot utilize § 522(f)(1) to avoid the fixing of the lien.

2. *In re Stoneking*

Debtor, on the other hand, contends that the more recent case of *In re Stoneking* casts new light on *Farrey's* reach and influence, and compels a different result than that reached by this Court in *In re Mingo*.

In *In re Stoneking*, the attorney for the wife in a divorce action obtained an order which determined that the fees she incurred for

MEMORANDUM OF DECISION - 8

representation during the divorce proceedings were a community obligation payable from community property.[3] The court ordered a judicial lien in favor of the attorney against the community property, while it was still community property, and before that property was awarded to the husband in the decree. The attorney recorded the lien before the husband filed for bankruptcy.

During the course of the bankruptcy proceedings, the debtor moved to avoid the attorney's lien. The attorney opposed the motion by arguing that, under *Farrey*, the debtor acquired his interest in the property after the fixing of the lien, and therefore could not avoid it. The bankruptcy court instead concluded that *Farrey* was inapplicable under the circumstances and granted the debtor's motion to avoid the lien. On appeal, the BAP affirmed, noting that the facts of the case were distinguishable from those of *Farrey*:

---

[3] In California, a motion to obtain such an order securing counsel's fee claim is called a "Borson" motion. *See In re Marriage of Borson*, 112 Cal. Rptr. 432 (Ct. App. Cal. 1974).

MEMORANDUM OF DECISION - 9

> Creditor's argument, however, fails to acknowledge the critical distinction between this case and the *Farrey* case. Here, unlike *Farrey* and its progeny, the judicial lien attached to the Debtor's community property; Debtor held this community property interest before the lien attached. In the other cases, the lien attached to newly-created property interests and the debtors did not hold those interests before the fixing of the lien. As a result of this material distinction, Debtor can avoid the lien under the "critical inquiry" of *Farrey* [quoted above].

*In re Stoneking*, 225 B.R. at 693.

The BAP explained why these factual differences compel an outcome different than that reached in *Farrey*:

> While a debtor may not avoid a lien that attached before he held *any* interest in the property, it does not necessarily follow that a debtor cannot avoid a lien merely because his property interests were augmented after attachment of the lien. If a debtor could have avoided such a lien on community-held real property pursuant to section 522(f)(1) before acquiring sole ownership of the property, that debtor should not lose the right to avoid that same lien after acquiring sole ownership. . . . Applying *Farrey* under such circumstances to preclude the avoidance of a third-party lien "is inconsistent with [section 522(f)'s] main purpose, is not fair, and is contrary

MEMORANDUM OF DECISION - 10

> to common sense." *In re Ulmer*, 211 B.R. 523, 524
> (Bankr. E.D.N.C. 1997). Instead, *Farrey's* focus on
> the time of lien attachment should be sufficient to
> prevent efforts by a debtor to avoid a judgment
> lien that is created as part and parcel of the
> creation of the interest that it encumbers.

*Id*. at 695 (emphasis in original).

### 3. Application of Case Authority

The BAP in *In re Stoneking* noted three significant distinctions between the facts therein, and those found in *Farrey*:

> Unlike the lien in *Farrey*, the lien in this case
> explicitly encumbered the community property of
> Debtor and Former Spouse. Further, unlike
> *Farrey*, the creation of Creditor's judicial lien . . .
> was an event separate from – not simultaneous
> with – the transformation of Debtor's community
> property into separate property . . . . Moreover,
> unlike *Farrey*, when Creditor's lien was created,
> Debtor still held a community property interest in
> the Residence.

*Id*. at 694.[4] All three of these factual distinctions are likewise presented in this case.

---

[4] Indeed, the *In re Stoneking* panel noted that it believed the U.S. Supreme Court specifically limited its holding in *Farrey* to liens created simultaneously with the creation of "new" property interests. *Id*. at 695, 690 n. 3.

MEMORANDUM OF DECISION - 11

First, Creditor's lien predates the parties' divorce and affixed to their community property interest while Debtor and Ashcraft were married.

Whether Debtor possessed an interest in the homestead property prior to the fixing of Creditor's lien is answered by reference to state law. *Farrey*, 500 U.S. at 299; *In re Catli*, 999 F.2d at 1408; *In re Barnes*, 198 B.R. 779, 782 (9th Cir. BAP 1996).  There appears to be no factual dispute about this issue.  During oral argument, counsel for Debtor stipulated to the existence of certain facts, which Debtor's counsel read into the record.  One of those stipulated facts was that Debtor and Ashcraft had acquired the homestead property in Bingham County in 1998, and built a home on it while they were married.  In Idaho, there is a "presumption that all property acquired after marriage is community property."  *Reed v. Reed*, 44 P.3d 1108, 1113 (Idaho 2002) (citing *Barton v. Barton*, 973 P.2d 746, 748 (Idaho 1999); Idaho Code § 32-903.  Thus, as the homestead was acquired during their marriage, the property was indeed the parties' community property when Creditor obtained and recorded its judgment lien against the property.

MEMORANDUM OF DECISION - 12

In Idaho, both husband and wife have equal, vested rights in their community property. *In re Hunt*, 94 I.B.C.R. 62, 65 (Bankr. D. Idaho 1994) (citing *Hansen v. Blevins*, 367 P.2d 758 (Idaho 1962); *Compton v. Compton*, 612 P.2d 1175 (Idaho 1980)).  They both have an equal right to possess and control their community property. *In re Hunt*, 94 I.B.C.R. at 65; Idaho Code § 32-912.  In a similar vein, a husband and wife each has the "power to encumber more than their own half of the community," *See Compton*, 612 P.2d at 1182.  Thus, the "debts of one partner encumber the community property interests of both partners." *In re Hunt*, 94 I.B.C.R. at 65.  Simply put, while Ashcraft incurred the debt, Creditor's judgment lien attached to both Debtor's and Ashcraft's community property interests in the Bingham County property at the time the lien was recorded.

The second distinction noted by the BAP as to the facts of *Farrey* and *In re Stoneking* is also present here: the creation of Creditor's lien did not occur simultaneously with the entry of the divorce decree.  Rather, that lien was created and attached about six months *prior* to entry of the decree, and was wholly unconnected with the divorce.

MEMORANDUM OF DECISION - 13

Third and finally, unlike *Farrey*, when Creditor was granted its judgment, and recorded its judicial lien, Debtor still held a community property interest in the homestead.

Based upon these critical facts, the Court concludes that *Farrey* does not control, and *In re Stoneking* represents the better-reasoned view of the applicable law.[5] Other courts have reached a similar conclusion. *See e.g., In re Pederson,* 230 B.R. 158 (9th Cir. BAP 1999) (a judgment lien that attached simultaneously with the debtor's acquisition of property may not be avoided; the decision followed *Farrey* and stated it was "consistent" with *In re Stoneking*); *In re Perez*, 391 B.R. 190 (Bankr. S.D. Fla. 2008) (*Farrey* distinguishable as to a previously recorded judgment is at issue); *In re Mariano*, 311 B.R. 335, 341 (Bankr. D. Mass. 2004) ("*Farrey* does not stand for the proposition that a lien, once "affixed" may not be avoided").

This is not the first occasion on which the Court has distinguished *Farrey*. In *In re Vierra*, 93 I.B.C.R. 128 (Bankr. D. Idaho 1993), the debtor

---

[5] The Court acknowledges that its holding here may cast doubt on the continued viability of *In re Mingo*.

MEMORANDUM OF DECISION - 14

and his wife executed a property settlement agreement during the pendency of their divorce which provided, *inter alia*, that the debtor would assume a loan made to the parties by the wife's parents to purchase the homestead, but which was not secured by the property. *Id*. at 129. While the state court's decree adopted the agreement, it did not provide that the agreement to repay the wife's parents would be secured by the homestead. As a result, this Court held that when the debtor first obtained title to the homestead, it was not subject to a judicial lien in favor of the wife's parents, and thus any subsequent lien was not protected under *Farrey*. *Id*. at 130.

This same analysis applies here. Both Debtor and Ashcraft had a community interest in the homestead when Creditor's lien first affixed to the property. While Debtor's interest was later augmented by the decree, such does not change the analysis. Because Creditor's lien affixed to Debtor's interest in the property prior to the parties' divorce, the first element required for lien avoidance under § 522(f)(1) is met.

**B.**

MEMORANDUM OF DECISION - 15

**Impairment**

The second element to consider under § 522(f)(1) is whether Creditor's lien impairs an exemption to which Debtor would have been entitled. The Code provides a formula that, when applied, dictates whether a lien impairs an exemption. § 522(f)(2)(A).[6] Pursuant to the statutory formula, the Court is instructed to total Creditor's lien, as well as any other liens on the property, plus the amount of the homestead exemption, and compare that sum with the value of Debtor's residence in order to determine the extent to which, if any, Creditor's lien impairs Debtor's homestead exemption. *Cal. Cent. Trust Bankcorp v. Been (In re Been)*, 153 F.3d 1034, 1035 n. 1 (9th Cir. 1998); *In re Taylor*, 03.2 I.B.C.R. 132,

---

[6] § 522(f)(2)(A) provides:
>   For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
>> (i) the lien;
>> (ii) all other liens on the property; and
>> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
>   exceeds the value that the debtor's interest in the property would have in the absence of any liens.

MEMORANDUM OF DECISION - 16

133 (Bankr. D. Idaho 2003).

In Schedule A, Debtor valued the homestead property at $94,000, and listed the amount due on consensual secured claims at $120,386.53. Docket No. 1.  However, Debtor's motion represents that the secured claim balance is $104,386.53, Docket No. 19, and at the hearing, her counsel stated that the property was encumbered by $104,000 in consensual liens. Creditor, on the other hand, provided no information to the Court concerning the value of the property, or the amount due on consensual liens on Debtor's homestead property.  Therefore, while the precise amount due is uncertain, there does not appear to be any dispute that the amount owed on consensual secured claims exceeds the value of the homestead property.  As a result, the Court concludes that Creditor's lien impairs Debtor's homestead exemption, and the second element is met.

## C.

### Judicial Lien

Under § 522(f)(2)(A), the final element for avoidance requires that

MEMORANDUM OF DECISION - 17

the lien in question be "a judicial lien, other than a judicial lien that secures a debt of the kind that is specified in section 523(a)(5) . . . ." A "judicial lien" means a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(36).

There is no dispute concerning this element. The debt owed by Ashcraft to Creditor was for a loan, not a support obligation of the type described in § 523(a)(5). When Ashcraft defaulted on the loan, Creditor sued him and obtained a money judgment against him, which it recorded. The recording of the judgment in the county real property records created the lien on the Bingham County property. Idaho Code § 10-1110. Therefore, Creditor's lien is a judicial lien.

## *Conclusion*

All the elements required for avoidance of Creditor's lien under § 522(f)(1) are met under the facts presented in this case. Accordingly, the Court concludes that Debtor's motion should be granted, and that Creditor's lien as against the Bingham County property should be

MEMORANDUM OF DECISION - 18

avoided.[7]  A separate order will be entered.

Dated: November 30, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[7] Of course, the Court's decision does not impact Creditor's right to enforce its judgment against Ashcraft or his assets; it merely avoids the judgment as a lien against Debtor's fee simple interest in the Bingham County property.

MEMORANDUM OF DECISION - 19